UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

REGINA M.

                              **Plaintiff,**

v.                                                             5:21-CV-0295 (NAM)

COMMISSIONER OF SOCIAL SECURITY,

                              **Defendant.**

───────────────────────────────────────

**APPEARANCES:**

Howard D. Olinsky
Olinsky Law Group
250 S. Clinton Street, Suite 210
Syracuse, NY 13202
*Attorney for Plaintiff*

Rami Vanegas
Amelia E. Stewart
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203
*Attorney for Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

    Plaintiff Regina M. filed this action on March 16, 2021 under 42 U.S.C. § 405(g), challenging the denial of her application for Social Security Disability ("SSD") benefits under the Social Security Act. (Dkt. No. 1). After carefully reviewing the Administrative Record, ("R," Dkt. No. 12), the Court reverses the decision of the Commissioner and remands for further proceedings.

1

## II.     BACKGROUND

On December 6, 2017, Plaintiff filed an application for SSD benefits, alleging disability beginning on June 21, 2017, due to: 1) anxiety; 2) depression; 3) body shakes that are uncontrollable at times; and 4) acid reflux, with burning lasting up to 10 days.  (R. 147, 176).  Plaintiff's claim was initially denied on February 23, 2018.  (R. 81).

Plaintiff requested a hearing, and she appeared by video and testified at the hearing on July 31, 2019 before Administrative Law Judge ("ALJ") Gretchen Mary Greisler.  (R. 33–61).  After the hearing, the ALJ issued an unfavorable decision on September 30, 2019.  (R. 15–26).  The Appeals Council denied review on January 19, 2021.  (R. 1).  Plaintiff then commenced this action.  (Dkt. No. 1).

### A.  Plaintiff's Background and Testimony

As of the hearing date, Plaintiff was 58 years old and lived with her significant other.  (R. 41).  She has received a GED and graduated from a vocational school.  (R. 43).  She previously worked as an administrative assistant.  (R. 43–44).  Plaintiff testified that she could not work due to her anxiety and depression, in particular the physical effects caused by her anxiety.  (R. 46).  Plaintiff testified that due to her anxiety, she became "violently sick" and could not eat food or even take medicine; she got "very bad migraines" multiple times a week; and she reported problems breathing, thinking, concentrating, focusing, and functioning in general.  (R. 47).  Plaintiff testified that she experienced particularly bad episodes of anxiety several times a year when she could not do anything and had to stay in bed.  (R. 51).  She testified that she was usually capable of driving, grocery shopping, and household chores, but that she spent 90 percent of her time in her bedroom.  (R. 48–49, 54).

### B. Medical Evidence

#### 1. Treatment Records

On June 12, 2017, Plaintiff treated with Mary E. Bartek, Ph.D. (R. 352). Plaintiff reported anxiety, emotional eating, and worrying thoughts. (R. 353). Dr. Bartek found that Plaintiff had normal attention, concentration, memory, abstraction, judgment, and coping ability. (R. 353–54). Dr. Bartek diagnosed Plaintiff with Post Traumatic Stress Disorder ("PTSD"). (R. 354). On June 19, 2017, Plaintiff returned to Dr. Bartek and reported anxiety and depression; Dr. Bartek noted that she was very negative and angry. (R. 356).

On August 28, 2017, Plaintiff underwent a diagnostic evaluation performed by her therapist, Fay Meling, LCSW-R. (R. 358). Plaintiff reported she was always anxious, got angry easily, and that stress made her physically sick. (R. 358). Therapist Meling examined Plaintiff and noted that she had a tense posture; normal memory; distractible attention; hypervigilance; scattered, preoccupied concentration; a constricted, anxious, sad, and depressed facial expression; a restricted and tearful affect; a guarded attitude; a depressed, discouraged, anxious, and stressed mood. (R. 359–60). Therapist Meling diagnosed Plaintiff with Major depressive disorder, personality disorder, generalized anxiety disorder, and PTSD. (R. 360).

On September 18, 2017, Plaintiff treated with Dennis Nave, M.D., for her anxiety, which was rated as mild. (R. 470). On examination, Dr. Nave noted that Plaintiff had a depressed affect and was tearful. (R. 471). Plaintiff reported being unable to focus and concentrate. (R. 472). Plaintiff was seeing a counselor and could not tolerate antidepressants. (R. 472).

On September 25, 2017, Plaintiff returned to Therapist Meling and reported depression, anxiety, and feeling helpless. (R. 364). Therapist Meling noted that Plaintiff had a depressed mood and tearful affect, and her status was moderately worse. (R. 364). On October 3, 2017,

Plaintiff saw Therapist Meling and again reported anxiety, depression, and difficulty eating; Therapist Meling noted that Plaintiff was extremely thin and cried throughout the session. (R. 366–67). Plaintiff's symptoms were the same on October 10, 2017. (R. 368).

On October 24, 2017, Plaintiff saw Therapist Meling and reported anxiety, depression, and difficulty eating. (R. 372). Therapist Meling noted that Plaintiff had a depressed mood and tearful affect, and her status was slightly worse. (R. 372). Plaintiff's symptoms were largely the same on October 30, November 7, November 14, November 21, November 28, and December 5, 2017. (R. 374–84). On January 2, 2018, Plaintiff reported similar symptoms and that she had lost her job due to her health problems. (R. 387–88). Plaintiff was tearful, very depressed, and weighed only 94 pounds. (R. 388).

On March 28, 2018, Plaintiff treated with Barbara Greene, Ph.D. for psychotherapy. (R. 430). Dr. Greene noted Plaintiff had an anxious mood as well as an "extreme traumatic response to daily life stressors particularly confrontation." (R. 430). On April 11, 2018, Plaintiff returned to Dr. Greene, who noted that Plaintiff reported anxiety and had a tearful mood. (R. 430). On April 25, 2018, Dr. Greene noted that Plaintiff was anxious and fidgety. (R. 431).

On May 5, 2018, Plaintiff returned to Dr. Nave and reported anxiety and depression. (R. 474). Dr. Nave noted that Plaintiff was tearful, but on examination her affect was appropriate to mood and calm. (R. 474–76). Plaintiff was taking Xanax for anxiety but could not tolerate antidepressants. (R. 477).

On May 7, 2018, Plaintiff returned to Dr. Greene, who noted that Plaintiff had an anxious mood and difficulty eating. (R. 431). Plaintiff saw Dr. Greene again on May 23, June 7, June 20, and August 7, 2018, and her symptoms were largely the same. (R. 432–34). On August 30,

4

2018, Plaintiff saw Dr. Greene and reported an improved mood, but on September 13, 2018, her anxiety and depression had worsened. (R. 435).

On September 27, 2018, Dr. Greene again noted Plaintiff had an anxious mood; she reported having panic attacks, somatic symptoms, and all-encompassing fears. (R. 436). Plaintiff's symptoms were largely the same when she returned to see Dr. Greene regularly in October 2018 through April 2019. (R. 436–42).

On April 30, 2019, Plaintiff returned to see Therapist Meling and reported anxiety, depression, difficulty eating, and suicidal ideation. (R. 423). Plaintiff said she suffered a bad meltdown, wanted to run away, and had thoughts of hurting herself, but now felt better. (R. 424). On May 7, 2019, Plaintiff saw Dr. Greene and said that "fears and shame haunt[]" her. (R. 443). Dr. Greene noted that Plaintiff had an anxious mood and limited daily functioning due to her fears, anxieties, and physical pain. (R. 443).

### 2. Opinion Evidence

#### a) Dr. Grassl

On January 8, 2018, Plaintiff saw consultative examiner Corey Anne Grassl, Psy.D., for evaluation of her mental conditions and impairments. (R. 344). Plaintiff reported loss of appetite and weight loss. (R. 344). Plaintiff said that she has experienced depression since childhood with sad moods, crying spells, guilt, hopelessness, loss of usual interest, irritability, worthlessness, diminished self-esteem, and social withdrawal. (R. 344). She reported excessive worry, restlessness, muscle tension; fear of crowds, bugs, driving, and germs; and exposure to trauma, nightmares, hypervigilance, intrusive thoughts, and detachment from others. (R. 344). She also reported short-term memory deficits and concentration difficulties. (R. 344).

On examination, Dr. Grassl noted that Plaintiff's thought process was coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia. (R. 345). Dr. Grassl further

noted that Plaintiff had a depressed affect and a moderately dysthymic mood. (R. 345). Plaintiff's attention and concentration and recent and remote memory skills were intact, and her cognitive functioning was average. (R. 346). Dr. Grassl found that Plaintiff's insight and judgment were fair. (R. 346). Plaintiff reported that she could do daily chores, but she could not drive or take the bus due to her anxiety. (R. 346). Dr. Grassl opined that there was no evidence of limitation in Plaintiff's ability to: understand, remember, or apply simple directions; understand, remember, or apply complex directions and instructions; use reason and judgment to make work-related decisions; and interact adequately with supervisors, co-workers, and the public. (R. 346). Dr. Grassl found that Plaintiff was moderately limited in her ability to sustain concentration and perform a task at a consistent pace, and she was markedly limited in her ability to: sustain an ordinary routine and regular attendance at work; and regulate emotions, control behavior, and maintain well-being. (R. 346). Dr. Grassl found that Plaintiff's difficulties were caused by psychiatric problems. (R. 347).

Dr. Grassl diagnosed Plaintiff with unspecified depressive disorder, specific phobia, unspecified anxiety disorder, and PTSD. (R. 346). Dr. Grassl assessed Plaintiff's prognosis as fair and recommended that she continue psychological and psychiatric treatment. (R. 347).

### b) Dr. Walker

In February of 2018, State agency consultant C. Walker, Ph.D. reviewed Plaintiff's file and found that she had no more than moderate limitations in any domain of mental functioning. (R. 67, 71–72). Dr. Walker opined that Plaintiff could: understand and remember simple and detailed instructions and work procedures without substantial limitation; maintain adequate concentration and attention to complete work-like procedures; sustain a routine; and handle brief and superficial contact with co-workers and the public. (R. 73). Dr. Walker also found that

Plaintiff would benefit from an environment with minimal distractions, she had adequate ability to handle ordinary levels of supervision in the customary work setting, and she retained the capacity to cope with basic changes and make routine decisions. (R. 73).

### c) Dr. Greene

On December 18, 2018, Dr. Greene wrote a letter for Plaintiff, noting that she had anxiety, depression, and past abuse and trauma. (R. 439). Dr. Greene stated that in June 2018, Plaintiff "decompensated and was overtaken with anxiety, exhaustion, depression and abdominal pain of intense degrees disabling nearly all functioning." (R. 439). Dr. Greene opined that Plaintiff was "disabled in daily life functioning, unable to function in the workplace and suffering daily with fears, phobias, anxieties, depression, abdominal pain, inability to tolerate most all foods, weight loss, social withdrawal, impairments in cognitive process, memory, and concentration." (R. 439).

### C. ALJ's Decision Denying Benefits

At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since June 21, 2017, the alleged onset date. (R. 17). At step two, the ALJ determined that Plaintiff had the following "severe" impairments: 1) chronic pancreatitis; 2) asthma; 3) spine disorder; 4) depressive disorder; 5) PTSD; and 6) anxiety disorder. (R. 18) (citing 20 C.F.R. § 416.920(c)).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)." (R. 18).

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [Plaintiff] can perform simple and detailed tasks but cannot perform highly complex tasks such as analyzing compiled data; [Plaintiff] can work in an environment that is not stringently production or quota-based, and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow her to sustain a flexible and goal-oriented pace; [Plaintiff] can tolerate brief and superficial occasional contact with supervisors and coworkers but can tolerate only incidental contact with the public; [Plaintiff] cannot work around crowds of people; [Plaintiff] can handle reasonable levels of simple work-related stress in that the individual can make simple decisions directly related to the completion of her tasks and work in a position where she is not responsible for the work of others and with little change in daily routine or work duties or processes; and [Plaintiff] cannot tolerate concentrated exposure to respiratory irritants.

(R. 20).

Next, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. 24). The ALJ then asked a vocational expert whether "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (R. 25). The vocational expert responded that such jobs included laundry worker II, kitchen helper, and linen room attendant. (R. 25). Based on this testimony, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 25). Consequently, the ALJ found that Plaintiff was not disabled. (R. 25).

### III.   STANDARD OF REVIEW

#### A.   Disability Standard

To be considered disabled, a claimant must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration uses a five-step process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] [*per se*] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the initial burden of establishing disability at the first four steps; the Commissioner bears the burden at the last. *Selian*, 708 F.3d at 418.

B.     **Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record

9

as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted). The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is affected by legal error. 42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112).

### C.     Evaluating Medical Opinions

For claims filed after March 27, 2017, as is the case here, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The ALJ is still required to "articulate how [she] considered the medical opinions" and "how persuasive [she] finds all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," and an ALJ is required to "explain how [she] considered the supportability and consistency factors" for a medical opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the Regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The Regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

**IV.   DISCUSSION**

Plaintiff challenges the ALJ's decision to deny her SSD benefits on the grounds that the "ALJ's RFC determination is unsupported by substantial evidence as the ALJ failed to properly address the opinion evidence of record in accordance with the prevailing rules and regulations." (Dkt. No. 12, p. 8). In particular, Plaintiff objects to the ALJ's analysis of Dr. Grassl's opinion. (*Id.*). In response, the Commissioner argues that the ALJ "properly and supportably evaluated Dr. Grassl's opinion." (Dkt. No. 16, p. 7).

**A.   Dr. Grassl's Opinion**

Dr. Grassl examined Plaintiff on January 8, 2018 and evaluated her mental impairments. (R. 344). Dr. Grassl opined that there was no evidence of limitation in Plaintiff's ability to: understand, remember, or apply simple directions; understand, remember, or apply complex directions and instructions; use reason and judgment to make work-related decisions; and interact adequately with supervisors, co-workers, and the public. (R. 346). Dr. Grassl found that Plaintiff was moderately limited in her ability to sustain concentration and perform a task at a consistent pace, and she was markedly limited in her ability to: sustain an ordinary routine and

11

regular attendance at work; and regulate emotions, control behavior, and maintain well-being. (R. 346).

The ALJ found that Dr. Grassl's opinion was "partially persuasive and somewhat consistent with the record." (R. 24). According to the ALJ, Dr. Grassl's opinion that Plaintiff suffers from marked mental health limitations "is inconsistent with the totality of the record, as discussed above, and Dr. Grassl's own examination findings, which included intact memory and concentration." (R. 24).

Primarily, Plaintiff argues that the ALJ's analysis of the consistency of Dr. Grassl's opinion with the "totality of the record" was flawed because the ALJ did not accurately state or summarize the record. (Dkt. No. 12, p. 10). The Court agrees. As discussed above, when analyzing a medical opinion, an ALJ is required to "explain how [she] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Here, the ALJ stated that "although the record includes evidence of mental impairment, the totality of the record does not support the claimant's allegations as to the severity of such impairment." (R. 22). In support of this conclusion, the ALJ noted that: 1) on examination in 2017, Plaintiff's affect, mood, judgment, decision-making, and coping ability were normal; 2) during the consultative examination in 2018, her memory, attention, and concentration were intact, and her insight and judgment fair; 3) Plaintiff "engages in a range of activities"; and 4) Dr. Walker opined that Plaintiff had no more than moderate limitations. (R. 22–23).

But the ALJ's analysis glossed over the treatment notes from Plaintiff's two primary mental health care providers. Although the ALJ identified some abnormal findings from Therapist Meling's evaluation of Plaintiff in August 2017, the ALJ omitted any reference to or summary of Therapist Meling's treatment notes for Plaintiff, which involved at least a dozen

sessions, during which Plaintiff reported anxiety, depression, and difficulty eating and she had a depressed mood and/or a tearful affect. (R. 364–88). Similarly, the ALJ briefly discussed Dr. Greene's opinion but did not mention any of the underlying treatment notes, which often showed that Plaintiff had an anxious mood and/or a tearful affect. (R. 431–36).

The Commissioner correctly notes that the ALJ need not recite every piece of evidence that contributed to the decision. (Dkt. No. 16, p. 14) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). However, it is also well-settled that the ALJ "cannot pick and choose evidence in the record that supports [her] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) (cleaned up).

Here, by not specifically addressing Plaintiff's treatment with Therapist Meling and Dr. Greene, the ALJ painted an incomplete version of the overall record, one where treatment was "sporadic," (R. 22), and abnormal findings were outliers rather than the norm.[1] This necessarily tainted the ALJ's analysis of Dr. Grassl's opinion. The ALJ concluded that Dr. Grassl's opinion finding that Plaintiff had marked limitations was not consistent with or supported by the overall record, but that was without considering the treatment notes from Therapist Meling and Dr. Greene, who both had long treating relationships with Plaintiff and documented findings that tended to reinforce Dr. Grassl's assessment. Accordingly, the Court finds that the ALJ's analysis of Dr. Grassl's opinion is not supported by substantial evidence. *See Andrew G. v. Commr. of Soc. Sec.*, No. 19-CV-942, 2020 WL 5848776, at *8, 2020 U.S. Dist. LEXIS 182212, at *21 (N.D.N.Y. Oct. 1, 2020) (finding that the ALJ's inadequate review of the plaintiff's treatment records tainted his analysis of the medical opinions).

---

[1] The ALJ's analysis also fails to recognize that mental health conditions often do not progress in a linear fashion, but rather "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). In such cases, it is particularly important to review the record as a whole to assess the plaintiff's mental condition and ability to function. *Id.*

### B. Remedy

In general, remand is appropriate for Social Security claims when further findings and development of the record would help to assure proper disposition of the claims. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). As discussed above, the ALJ's decision was flawed with respect to Dr. Grassl's opinion. Consequently, remand is necessary for the ALJ to reconsider Dr. Grassl's opinion and Plaintiff's overall RFC. *See Darla W. v. Commr. of Soc. Sec.*, 5:20-CV-1085, 2021 WL 5903286, at *10, 2021 U.S. Dist. LEXIS 238395, at *25 (N.D.N.Y. Dec. 14, 2021) (remanding due to the ALJ's failure to adequately explain the supportability and consistency factors that led to his decision).

### V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision & Order; and it is further

**ORDERED** that the Clerk amend the caption to substitute KILOLO KIJAKAZI, Acting Commissioner of Social Security, for Defendant Commissioner of Social Security; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date: May 16, 2022
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

14